Good morning. Welcome to the Ninth Circuit. We will hear the cases in the order in which they appear on the calendar. We have several cases submitted on the briefs. The first case for argument is United States v. Boychief. Ms. Bolton, you may proceed. Ms. Bolton Good morning. May it please the Court, Counsel. The Fourth Amendment protects us from unreasonable searches and seizures. This case involves an unreasonable search and seizure. The facts of this case establish that Mr. Boychief was stopped driving his truck. Officer Inman said that he stopped his truck because of a mud flap violation. However, as the facts rolled out through the report of the officer and the testimony of the officer during the motion to suppress hearing, what happened, what could have been easily established almost right away after the stop was conducted, was a determination whether or not that violation actually occurred. But no effort was undertaken whatsoever to establish that that violation occurred, the mud flap violation. Mr. Chisholm Why does it matter whether it actually occurred? I thought what mattered was whether the officer had reasonable suspicion that it was occurring. Ms. Bolton Yes, but what an officer is directed to do by this Court's case law and the case law of the United States Supreme Court in Rodriguez is to follow up on the mission of the stop. So was it reasonable for the officer to completely abandon that mission right away? And we submit it wasn't. All he had to do was to grab a tape measure from his car and measure the bottom fender of that truck to the roadway to determine if there was... Ms. Boychief What I'm puzzled by is the argument of the stop and then your other argument of prolonging the stop. Ms. Bolton Yes. Ms. Boychief And now you've kind of inserted a middle argument of, well, after the stop, he should have done this measurement. But from reading the record, it seems that the counsel waived the argument about the validity of the initial stop. Ms. Bolton But I didn't. And I can tell you, I know that the District Court put me on the spot during the motion to suppress hearing and I stumbled a little bit on that. But I think what the record shows, if you look at my actually filed motion to suppress, which is part of the record, and it's specifically at the excerpts of record that references my actual filings. I'm sorry, let me see if I can find the actual. My motion to suppress is at the excerpt of record 364. That's my memo. And at the page just before that 362, you can see in my motion to suppress, and it's not Mr. Boychief's burden. We said that the stop, that the evidence should be suppressed because it was the fruit of an unlawful stop, detention, and search of Mr. Boychief. We put it in our motion to suppress. We said it again in our memorandum in support at excerpts of record 364. Mr. Boychief seeks suppression of any and all evidence obtained as the fruit of the unlawful stop. Unlawful based on the four inches difference? Well, based on, look, we know that it was a pretext stop. The officer was going after drugs. That's, we know that. And that's okay. Yeah, but we, there's plenty of law that suggests that there is this matter, does it on this issue? Well, what happened was, what the officer did is he got out and he immediately abandoned the purpose of the stop, right? The pretext. He went straight for the investigation. Isn't the only issue whether or not the mudflaps were lawful or unlawful? And obviously they were clearly unlawful. Right, but that wasn't, here was the issue that I faced at the motion to suppress hearing. To explore that issue, we need to explore the reasonableness of the officer's suspicion. Was it based on objectively reasonable facts known to the officer? When I attempted to explore that at the motion to suppress hearing, the district court cut me off. The judge didn't allow me to inquire. What I had prepared, and you can kind of track it from the transcript of that record, is I had prepared with an investigator photographs that showed cars that were lawful under the statute, 10 inches, either they had a mudflap that was 10 inches to the roadway or the fender was 10 inches to the roadway. But the only issue is whether or not the mudflaps were legal or not. Isn't that, so it really doesn't matter, does it? Well I think it matters. For example, suppose he was stopped because of a defective tail light. The tail light didn't work. How would you analyze your current argument to that situation? Well, a tail light is immediately obvious, objectively reasonable. I'm looking at a video. If you see them stop and the tail light is broken, you can see from the dash cam video that it's broken. But you can't, is it reasonable to just simply stop someone based on your own idea of what a mudflap violation looks like, without taking any steps to confirm that your suspicions are reasonable? But the suspicions turn out to be correct. And it only needs to be a reasonable suspicion, not a precise suspicion, right? Right, but I want to go back to your earlier point, and that had to do with the challenge to the stop itself as opposed to the prolonged detention following it. Because at the suppression hearing the court says, before you move on, let me come back to my earlier problem here. I asked if you're challenging the stop in the search. I've gone back and your brief doesn't say anything about the stop. So have you raised that before today? And you say no. What we've set forth, Your Honor, in our pleadings and memo is Ninth Circuit and Supreme Court law of an officer not prolonging a stop past its initial purpose. So with that it would seem to me the district court would be understanding, okay, the stop is not an issue here, but there may have been inappropriate conduct following the stop. Why isn't that whole colloquy significant? Well, I think that the burden is not on the defendant to articulate in all details what the basis is for the challenge, other than to broadly assert those challenges, and then of course the focus of the hearing was the prolongation of the stop. And there was a great amount of effort spent on that issue. Correct. And you basically tell the court, no, I'm not talking about the stop. I'm only talking about the prolonging of the stop. That seems pretty definitive to me. Well, what I explained to the judge is what I wanted to explore. And while inarticulate, I had established on the record that I was challenging the stop. And that's because of the page 362 and 364 that you referred us to earlier. Yes. But I mean, I guess this is sort of following up on Judge McEwen's question, because I read the filing in the district court and you correctly quoted those passages that say an unlawful stop, but nowhere else in the motion is there any explanation of why it was unlawful. The focus of the argument is on the fact that it was prolonged, isn't it? Right. That's true. And that's because you cannot really make the argument until you examine the witness, right? I don't know. He doesn't put in his report what the reasonableness of his suspicion is. The point of a motion to suppress hearing is to put the government to their burden, to demonstrate that it was a reasonable stop based on reasonable suspicion. So the defendant throws in a whole bunch of ideas on what to explore and then attempts to explore them. But we were unable to establish the record on that. I wasn't able to articulate the argument because the court wouldn't let me explore that with the witness. So that is the concern with that first issue in terms of the district court cutting us off. But what happens here that is concerning and what I would suggest is unreasonable is that after, okay, we don't even try to look at the measurement, okay, we get past that and we get to the window where the officer is talking to Mr. Boyd Chief. And his police report says he has an odor of marijuana. But in the field, in the video, and he's challenged about this at the suppression hearing, he admits that all he had said was that there was a slight tinge of marijuana. So I think that that puts before the court squarely whether that's reasonable to prolong the stop, to go into this general criminal investigation for drugs and run a drug dog around the car when all you have is a slight tinge of marijuana. And this court has decided that a strong odor under Guzman v. Padillo is enough, but is a slight tinge enough. Could you just clarify the timing though because I thought while the dog is going around that your client's still kind of going through finding the insurance on his telephone, which he's required to show my license, my insurance. So that whole sequence doesn't prolong anything in my view because he's still coming up with his insurance. True, but at what point does the officer decide, okay, he doesn't have insurance, I'm going to issue a citation or it doesn't matter. Can you prolong the stop for hours because a person is trying to find their insurance inarticulately on their phone? How long was it before he found his insurance? Well, we don't know because he never explored that. But he knows. Your client was there, right? No, I know, but the officer never went for that, never got it. He arrested him based on a search. But we don't know he hasn't produced the... We do know that he's looking, but hasn't come up with it when the dog goes around and then the officer says, hmm, time to arrest. Yes, and rather than go around, rather than measure for the medical violation or write him a ticket because he doesn't have his insurance, which would address the issue, he then prolongs the stop and runs a drug dog around who is in the field 61% of the time wrong. That's another point. I think I'm nearly out of time. You're past your time, but we'll give you a minute for rebuttal. I wanted to reserve some time, but I guess I'm out. We'll give you one minute. Okay, thank you. Mr. Ellsworth. May it please the court, counsel. My name is Bryce Ellsworth and I represent the United States. The district court correctly denied the defendant's motion to suppress. The record shows that there was reasonable suspicion to stop the vehicle for the infraction, that the extension of the stop was also appropriate, and that there was probable cause to support the search. When I first address the reasonable suspicion required to pull over the vehicle in this case, defense counsel has never really articulated what they're arguing about the reasonable suspicion in this case. The officer specifically articulated the facts, which together with objective and reasonable inferences, he observed that supported the stop. What about the tape measure argument? The tape measure argument doesn't relate to this case because the officer can't measure the car as he's following behind at 20 feet. As he approaches the car under Rodriguez, he has the right under, Rodriguez specifically states, that the officer can ask for a driver's insurance, they can check your registration as part of the mission to stop. Plus, the officer, as he approaches the vehicle, he looks and he confirms his suspicion, and then he immediately makes contact with the individual. He's not going to stop at that point and pull a tape measure out at the back of a running vehicle with occupants he doesn't know. He's going to make contact with his individuals, identify why he's there, their safety concerns, he wants to make sure there's no concerns there, and then he'll continue with the issue regarding the mud flaps. To claim that he had to essentially step out of the vehicle and measure immediately is just wrong. Defense counsel conceded that during the hearing, agreed with the court that that wasn't necessary at that time. Throughout the hearing and all the briefings, again, they never argue why it was unreasonable, they just argue that it was prolonged. And so when you look at the facts that the officer provided, he's driving directly behind the truck, he can see that it has no mud flaps, it's a truck, this is an officer with a decade of experience, he sees trucks all the time, this one was clearly over 10 inches and he was correct. And so there's clearly reasonable suspicion to support the officer's conclusions in this case and pull the defendant over. What about the district court's statement that it related to the subjective intent of the officer as opposed to the objective? So at the time... You agree that's wrong? Yes, that's wrong. We're two days into a hearing that was only supposed to take one day, and at that point defense counsel is seeking to introduce hypotheticals unrelated to this stop. And I think there was some frustration by the court, but at the same time I think what the court was trying to articulate, and again I can't, I wasn't in his mind, but every officer as they're making these determinations on a day-to-day basis, these determinations are subjective to that officer, the time frame, when it occurs, the weather, those types of things. Ultimately he has to be able to articulate, as reasonable suspicion requires, the specific objective and reasonable inferences. And so, though the court misstates that standard during this brief conversation, when you look at its actual order, it clearly sets out reasonable suspicion on page 15 of the Excerpt of Records in regards to prolonging a stop. It understands what reasonable suspicion is. And it also clearly finds that reasonable suspicion existed in this case, both by determining that regardless if the defendant waived their arguments without records, he states to defense counsel there was reasonable suspicion to pull over the vehicle due to the mudflap violations. And so, despite that misstatement, I think it's still clear on the record that the court had enough information. Defense counsel also got to question the officer about the stop, about where he was, how he eyeballed it. The only thing they didn't get to question about is these hypotheticals that they didn't have restricted that line of questioning due to its relevancy. In regards to the extension of the stop, there was no extension of the stop to begin with. Now, there was reasonable suspicion that would have supported an extension of the stop. Officer Inman walks up to the window, and within a minute of making contact, as that window is rolled down, he smells the odor of marijuana. The district court determined that Officer Inman's testimony was credible, and that there was the smell of odor, and that the officer was correct. But the officer doesn't delay the stop at that point. What he does is when his backup officer, Ginwright, arrives, he asks Mr. Ginwright, or Officer Deputy Ginwright, to go ahead and stand at the window and wait for Mr. Boydchieff to retrieve his insurance, which he's doing. Mr. Boydchieff told the officer that he was looking up his insurance on his phone, and was in the process of doing that. And so Officer Ginwright stands next to the window, waiting for the insurance to be found. And it's during that time that Deputy Inman runs the dog around the vehicle. The dog hits, and then Deputy Inman returns back to the car and asks Mr. Boydchieff, who's still looking for his insurance, to step out of the vehicle so that he can discuss the fact that he smelled marijuana, and that a canine hit. And at that point, as soon as he tells Mr. Boydchieff that he smells marijuana, and asks him if there's marijuana in the car, Mr. Boydchieff says, I have marijuana in my pocket, and there is marijuana in the car. And we're done. There's no unlawful prolonging the stop. The officer actually continued the original purpose of the investigation by incorporating Officer Ginwright into the stop, and quickly dispelled his concerns about marijuana by deploying the dog. Ultimately, your honors, I do believe that the court was correct in denying the defendant's motion. There was reasonable suspicion for the stop. There was reasonable suspicion to extend the stop based off the smell of marijuana. And despite that, this officer did not extend the stop. He continued the original purpose of the investigation while he independently walked the dog around. And ultimately, that provided, that in combination with the defendant's own statements, provided probable cause to search the vehicle. Seeing no further questions, I will go ahead and ask that the court confirm the district court's ruling below. Thank you. Thank you. Ms. Bolton, you have one minute for rebuttal. Thank you for giving me an additional minute. What I want to say is this idea that the officer had safety concerns, and that's what made him not want to measure the car, is a bit absurd under this factual record. He goes to the window, talks to Boyd Chief, says he smells marijuana, which should independently, and that's how it tried to evolve during the hearing. If you look at the change in the officer's testimony to suddenly having these details of what the odor was that he didn't have in his report 10 months earlier, that he didn't have on the video 10 months earlier, you have, rather than if his safety was truly a concern, he's got probable cause at that point, he testified to at the hearing, he takes him out and he starts his investigation and arrest and whatever he needs to do. But he doesn't do that. Instead, he runs his canine around the car while Mr. Boyd Chief is still in the car and is still running. That is not consistent with a safety concern. Now, what is unreasonable here and what I really want to urge the court is that running a canine around a car who has demonstrated over the many months leading up to this particular running around an open air sniff that has been wrong 61% of the time is not reasonable. We should hold law enforcement to a higher standard. Individuals standpoint are having being stopped. They're getting this alert by this canine who is usually wrong and their cars are getting searched. But this time he was right. He was right this time, but but of course, sometimes he's gonna be right. But you're but you're searching without a warrant and without probable cause. If you have a dog, that's your argument. Thank you. Thank you. Thank both counsel for their arguments this morning and the case is submitted.
judges: O'SCANNLAIN, McKEOWN, MILLER